UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 07-22762-CIV-MORENO

TONA MORONGELL,

    Plaintiff,

vs.

MIAMI-DADE COUNTY,

    Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Defendant's Motion for Summary Judgment **(D.E. No. 41)**, filed on **April 23, 2008**. The Court has considered the motion, response and the pertinent portions of the record, and is otherwise fully advised in the premises. For the reasons set forth below, Defendant's Motion for Summary Judgment is GRANTED.

### I. Background

Plaintiff, Tona Morongell, sued Miami-Dade County for violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and Florida Civil Rights Act ("FCRA"). Morongell, a police officer employed by Miami-Dade Police Department ("MDPD") since 1981, alleges that she was subject to retaliation for filing complaints with the Equal Employment Opportunity Commission ("EEOC").

On June 24, 2005, Morongell filed her first EEOC Complaint against MDPD. Morongell alleged that, due to her race, MDPD discriminated against her by not selecting her to fill an open position as a Community Service Officer ("CSO"). On July 18, 2005, Morongell and MDPD

entered into a settlement agreement related to her EEOC Complaint pursuant to which Morongell was placed in the CSO position.

On August 9, 2005, Morongell filed her second EEOC Complaint against MDPD. Morongell alleged that, due to the filing of her first EEOC Complaint, MDPD retaliated against her by not allowing her to be paid for overtime work. The EEOC issued a Notice of Right to Sue letter, but Morongell did not file suit.

Approximately one year later, the County's General Services Administration ("GSA") began renovating the building where Morongell worked. Due to the renovation, one of the MDPD sergeants, Sergeant Jay Gore, instructed Morongell and other officers to remove their work materials during a two-week period while GSA worked in that area. On or about August 2006, Morongell arrived at work and noticed that her work materials had been placed in the covered patio area outside the building. When Morongell asked Sergeant Gore if there was another place that she could store her work materials, he told her that she could place them in an outside storage bin, but Morongell chose to leave her work materials in the patio area.

On August 31, 2006, Sergeant Gore instructed Morongell to give him her key to her first floor office. As a result, it was difficult for Morongell to perform her CSO duties. Morongell raised this issue with one of the MDPD majors, Major Elease Thompson, who then provided Morongell with an office on the second floor. Morongell then filed her third EEOC Complaint against MDPD. Morongell alleged that, due to the filing of her second EEOC Complaint, MDPD retaliated against her by placing her work materials on the patio and by taking the key to her first floor office and assigning her to an office on the second floor where she did not have access to her computer.

On October 27, 2006, MDPD Director Robert Parker promoted Morongell's ex-husband, Jorge Guerra, to First Lieutenant and assigned him to the Northwest District, Morongell's district, effective November 13, 2006.  When Morongell became aware that Guerra was going to be transferred to her district, she informed Major Thompson that she did not wish to work with her ex-husband.  On November 13, 2006, when Guerra was scheduled to start work in the district, Morongell requested and was granted seven weeks of sick leave.  On November 15, 2006, she filed a Career Service Grievance alleging that Guerra was transferred to her district in retaliation for the filing of her EEOC Complaints and she requested a transfer to another district.  On November 27, 2006, Major Thompson denied her grievance stating that (1) Guerra was transferred to the Northwest District in accordance with MDPD policy and (2) Morongell's chain-of-command was not affected by Guerra's transfer to the district.

On January 24, 2007, after Morongell had returned to work, she requested and was granted a reassignment from CSO to uniform patrol.  On February 5, 2007, she amended her third EEOC Complaint to include her claim of retaliation due to the transfer of Guerra to her district.  Subsequently, on August 10, 2007, she filed the instant case against Miami-Dade County alleging retaliation claims under Title VII and FCRA.

## II.  Summary Judgment Standard

Summary judgment is authorized when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The burden of establishing the absence of a genuine issue of material fact lies with the moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the party opposing the motion, who must set forth specific facts and establish the essential elements of his case on which

he will bear the burden of proof at trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Inferences are drawn in favor of the non-moving party, but such inferences "must, in every case, fall within the range of reasonable probability and not be so tenuous as to amount to speculation or conjecture." *Thompson Everett, Inc. v. Nat'l Cable Advert.*, 57 F.3d 1317, 1323 (4th Cir. 1995). The non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings." Fed. R. Civ. P. 56(c). Rule 56(e) mandates that a party moved against respond with affidavits, depositions, or otherwise, in order to reflect that there are material facts which must be presented to a jury for resolution. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-61 (1970). Conclusory allegations without specific supporting facts have no probative value. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000) (citing *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir.1985)). Where the record could not support a finding by the trier of fact for the non-movant, there is no genuine issue for trial and summary judgment is appropriate. *Matsushita*, 475 U.S. at 587. Although there may be evidence somewhere within the non-moving party's submitted record that might create a genuine issue of material fact, "[t]he district judge is not required to comb the record to find some reason to deny a motion for summary judgment." *Forsberg v. Pac. N.W. Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988).

### III. Applicable Law

Title VII[1] prohibits retaliation by an employer against an employee because the employee has opposed an unlawful employment practice or made a charge under the statute. 42 U.S.C. §

---

[1] FCRA retaliation claims are subject to Title VII analysis. *Sicilia v. United Parcel Service, Inc.,* 279 Fed. Appx. 936, 940 (11th Cir. 2008).

2000e-3(a). Barring direct evidence of retaliation, a plaintiff must establish a *prima facie* case of retaliation by showing that he suffered due to an action that a "reasonable person would find materially adverse." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). These are actions that might dissuade a reasonable worker from making or supporting a charge of discrimination. *Id.*

A plaintiff, in order to establish a *prima facie* case of retaliation, must also establish that there is a causal connection between his protected activity and his employer's action. *Curtis v. Broward County*, 2008 WL 4216551, No. 08-10010 at *3 (11th Cir. Sept. 16, 2008). To establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected activity and that the activity and the employer's action were "not wholly unrelated." *Id.* The causality element is satisfied if the plaintiff shows a "close temporal proximity" between the knowledge of the protected activity and the adverse action. *Id.*

Once the plaintiff establishes a *prima facie* case of retaliation as to one or more of his claims, the burden then shifts to the defendant to articulate a "legitimate, non-discriminatory reason" for the employer's action. *Bennett v. Chatham County Sheriff Dept.*, 2008 WL 4787139, No. 08-12083 at*5-6 (11th Cir. Nov. 4, 2008). This is a light burden. If the defendant succeeds, the presumption of discrimination evaporates and the burden shifts back to the plaintiff to produce sufficient evidence for a reasonable factfinder to conclude that each of the employer's proffered reasons are merely pretextual. *Id.* After viewing all of the plaintiff's evidence, the Court must determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons such that a reasonable factfinder could conclude those reasons did not actually motivate the defendant's conduct. *Crawford v. Carroll*, 529 F.3d 961, 967 (11th Cir. 2008).

## IV. Analysis

Under retaliation case law, Plaintiff must show that Defendant actually took some materially adverse action against the employee to establish a *prima facie* case. Whether an action is materially adverse or not is determined by applying a reasonable person standard under *Burlington*. 548 U.S. at 68. Morongell alleges that MDPD took materially adverse actions against her when (1) her work materials were place on a covered patio for two weeks, (2) she was denied access to her first floor office, (3) her ex-husband was transferred to her district, and (4) her requests to be transferred to a different district were denied. Each of these actions will be addressed in turn.

(1)  *Work Materials Placed On Covered Patio For Two Weeks*

On or about August 2006, GSA began renovating the building where Morongell worked. The renovation affected all of the officers working in the building. Due to the renovation, Sergeant Gore instructed Morongell and other officers to remove their work materials during a two-week period while GSA worked in that area. During this time, Morongell arrived at work and noticed that her work materials had been placed in the covered patio area outside the building. When she asked Sergeant Gore if there was another place that she could store her work materials, he told her that she could place them in an outside storage bin. Morongell chose to leave her work materials in the patio area for the two-week period. Morongell alleges that this amounts to an adverse action.

It is clear to the Court that a reasonable person would not find the temporary relocation of Morongell's work materials to be "materially adverse." During the two weeks that Morongell's work materials were relocated to the patio, she received her regular pay, worked her regular

schedule, and was not disciplined or reprimanded in any way due to the location of her work materials. If anything, Morongell suffered an inconvenience for those two weeks--an inconvenience that all of the employees working in the building experienced. In fact, *all* of the work materials and files (as well as computers, printers, photocopy machines, chairs, desks, and other furniture) located on the second floor were temporarily moved during the renovation. If Morongell did not want her materials specifically in the covered patio area, she could have moved them. She chose not to do so. Thus, the fact that Morongell's work materials were temporarily placed on the patio for two weeks during building renovations hardly amounts to an adverse action.

Even if this action were considered an adverse action, Morongell has failed to establish a *prima facie* case of retaliation because she has not established that there is a causal connection between her EEOC Complaints and MDPD's action in moving her work materials. Even if Sergeant Gore and the others involved in moving the work materials in 2006 knew of Morongell's 2005 EEOC Complaints, Morongell has not shown that the relocation of her work materials was related to her 2005 EEOC Complaints. In fact, the two seem "wholly unrelated." Further, the fact that the work materials were moved in August 2006, *over a year after her EEOC Complaints*, suggests no causality at all. The cases that accept temporal proximity between an employer's knowledge of protected activity and an adverse action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be "very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001); *Thomas v. Cooper Lighting, Inc.,* 506 F.3d 1361, 1364 (11th Cir. 2007) ("A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough."). Clearly,

a one-year period between knowledge of the EEOC Complaints and alleged adverse action is insufficient to establish causality.

Finally, MDPD has shown a "legitimate, non-discriminatory reason" for the temporary relocation of Morongell's work materials - the renovation of the building. Morongell has failed to show that MDPD's reason is "merely pretextual." For these reasons, Morongell has failed to establish a *prima facie* case of retaliation and her claim of retaliation must fail.

(2)     *Denial of Access to First Floor Office*

On August 31, 2006, Sergeant Gore instructed Morongell to give him her key to her first floor office. As a result, it was difficult for Morongell to perform her CSO duties as she could not access her computer, telephone and desk. Morongell raised this issue with Major Thompson, who immediately provided Morongell with an office on the second floor. Morongell alleges that this amounts to an adverse action.

It is clear to the Court that a reasonable person would not find the temporary inability to access an office to be "materially adverse." During the short time that Morongell could not access her office, she received her regular pay, worked her regular schedule, and was not disciplined or reprimanded in any way. If anything, Morongell suffered an inconvenience for that short time--an inconvenience that all of the officers working in the building experienced due to the building renovation. In fact, during the building renovations, numerous MDPD employees were denied access to their workspaces. For example, detectives and supervisors had to work out of their vehicles or check-out room and the Crime Analysis Unit, Payroll Specialist, and Police Record Specialists had to share a conference room. Further, the inconvenience to Morongell was only temporary as Major Thompson immediately assigned her to a newly renovated second floor

office. Thus, the fact that Morongell was temporarily denied access to her work space during building renovations hardly amounts to an adverse action.

Even if this action were considered an adverse action, Morongell has failed to establish a *prima facie* case of retaliation because she has not established that there is a causal connection between her 2005 EEOC Complaints and MDPD's action in temporarily denying her access to her office. Even if the officers at MDPD knew of Morongell's 2005 EEOC Complaints, Morongell has not shown that the denial of access to her office was related to her 2005 EEOC Complaints. In fact, the two seem "wholly unrelated." Further, the fact that this incident occurred in August 2006, *over a year after her EEOC Complaints*, suggests no causality at all. The cases that accept temporal proximity between an employer's knowledge of protected activity and an adverse action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be "very close." *Clark*, 532 U.S. at 273; *Thomas,* 506 F.3d at 1364 ("A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough."). Clearly, a one-year period between knowledge of the EEOC Complaints and alleged adverse action is insufficient to establish causality.

Finally, MDPD has shown a "legitimate, non-discriminatory reason" for the temporary denial of access to her office- the renovation of the building. Morongell has failed to show that MDPD's reason is "merely pretextual." For these reasons, Morongell has failed to establish a *prima facie* case of retaliation and her claim of retaliation must fail.

(3)   *Transfer of Ex-Husband to the District*

On October 27, 2006, Director Parker promoted Morongell's ex-husband, Jorge Guerra, to First Lieutenant and assigned him to Morongell's district. Morongell alleges the transfer of her ex-husband to her district amounts to an adverse action.

It is clear to the Court that the transfer of Morongell's ex-husband to her district is not an action that a "reasonable person would find materially adverse." The transfer of her ex-husband did not affect her employment in any way. In fact, only Morongell's own actions in requesting seven weeks of sick leave and reassignment to uniform patrol (both requests of which were granted) affected the conditions of her employment. Morongell cannot create an adverse action through her own voluntary actions. Until she changed the conditions of her own employment, she received her regular pay and worked her regular schedule. She was not disciplined or reprimanded in any way due to the presence of her ex-husband. Guerra did not have direct supervision over her, and the only time he would have possibly been in her chain-of-command would have been if the Major and Captain were absent from the district. A reasonable person under these circumstances would not have found Guerra's mere presence in the district to be a materially adverse action.

If employees could allege they suffered an "adverse action" any time a person they disliked was transferred into their office, it would create an unreasonable burden on employers to take into account each employee's personal relationships before making personnel decisions. Larger companies would be especially burdened by this task, as monitoring the relationships of hundreds of employees in various offices, districts, and states would be unmanageable. Not to mention the fact that if an employer *refused* to hire, transfer or promote an applicant due to another employee's personal relationship status with the applicant, they would surely face a lawsuit from the rejected applicant; the employer would be doomed to litigate no matter what action they took. Employers must be able to freely make business decisions without first checking to be sure that no interpersonal relationships are disturbed. Further, it would be ironic indeed to mandate that

employers take personal relationship status into account before making personnel decisions when generally employers have been prohibited by law from doing so.  Finally, this type of mandate would lead to a slippery slope where employees could allege they suffered an "adverse action" if any unpleasant acquaintance (e.g. irritating ex-boyfriend, bossy sister-in-law, annoying second cousin) was transferred to their office.  It is likely that every employee in an office situation is forced to interact with someone that drives them up the proverbial wall; if being forced to work with someone you disliked was actionable, the court system would be inundated with suits from employees.  This cannot be the result that the drafters of the statute intended.

Even if this action were considered an adverse action, Morongell has failed to establish a *prima facie* case of retaliation because she has not established that there is a causal connection between her EEOC Complaints and MDPD's action in transferring Guerra to the district.  As to the 2005 EEOC Complaints, even if the officers at MDPD knew of these EEOC Complaints, Morongell has not shown that the transfer of Guerra to her district was related to these EEOC Complaints.  In fact, they seem "wholly unrelated."  Further, the fact that this incident occurred in October 2006, *over a year after these EEOC Complaints*, suggests no causality at all as there is no "close temporal proximity."  As to the 2006 EEOC Complaint, Morongell has not shown that the decision-maker who transferred Guerra to the district had knowledge of the August 31, 2006 EEOC Complaint.  When Director Parker assigned Guerra to the district, he was not aware that Morongell had filed the August 31, 2006 EEOC Complaint.  Director Parker relied on Chief Randy Heller and Assistant Director Naim Erched's recommendation to assign Guerra to the district, and Morongell has failed to show that Heller or Erched had knowledge of Morongell's August 31, 2006 EEOC Complaint at the time they recommended Guerra be transferred.  Thus, Morongell has failed to establish causality.

Even if Morongell could demonstrate the requisite causality to establish a *prima facie* case of retaliation, MDPD has shown "legitimate, non-discriminatory reasons" for the decision to transfer Guerra to the district. Guerra was transferred because a position vacancy for First Lieutenant existed in the district and Guerra was next in line for the First Lieutenant position. Further, Guerra was qualified for the position and was considered to have good administrative, tactical, and people skills. Morongell has failed to show that these reasons are "merely pretextual." For these reasons, Morongell has failed to establish a *prima facie* case of retaliation and her claim of retaliation must fail.[2]

(4)     *Denial of Requests For Transfer to Another District*

When Morongell became aware that Guerra was going to be transferred to her district, she informed Major Thompson that she did not wish to work with her ex-husband. On November 15, 2006, she filed a Career Service Grievance alleging that Guerra was transferred to her district in retaliation for the filing of her EEOC Complaints and she requested a transfer to another district. On November 27, 2006, Major Thompson denied her grievance stating that (1) Guerra was transferred to the Northwest District in accordance with MDPD policy and (2) Morongell's chain-of-command was not affected by Guerra's transfer to the district. For the first time in her Opposition to Motion for Summary Judgment, Morongell alleges that this amounts to an adverse action. As Morongell cannot raise a claim in her Opposition that she did not raise in her Complaint, this Court cannot consider this claim. *See Brown v. Snow,* 440 F.3d 1259, 1266 (11th Cir. 2006).

---

[2]     Morongell also requests that the aforementioned alleged adverse actions be considered collectively as she believes that considered collectively, the actions constitute an adverse action. Even considering the alleged adverse actions collectively, the actions still do not constitute an adverse action for the reasons previously stated.

## V.  Conclusion

Plaintiff has failed to establish a *prima facie* case of retaliation based on Title VII protected activity for all of her individual allegations.  Further, Plaintiff has failed to establish that Defendant's articulated legitimate, non-discriminatory reasons for its actions were pretextual.  In sum, Plaintiff failed to establish a genuine issue of material fact regarding any of her allegations and Defendant is entitled to judgment as a matter of law.  Accordingly, it is

**ADJUDGED** that Defendant's Motion for Summary Judgment **(D.E. No. 41)**, filed on **April 23, 2008** is hereby **GRANTED**.

DONE AND ORDERED in Chambers at Miami, Florida, this 18th day of November, 2008.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:
Parties and Counsel of Record